**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No: 19-CV-0293-PAB-STV

| | |
|---|---|
| Gilbert T. Tso, a natural person and an American, ) | Article III, Court of Records |
| ) | Common Law |
| Plaintiff, ) | |
| ) | Verified Complaint for: |
| v. ) | |
| ) | ================================ |
| Rebecca Murray (a.k.a. Tso), et al., ) | Civil RICO; Violations of Civil Rights, States & |
| ) | Federal Statutes; Injunctive Relief (Sought) |
| ) | |
| Defendants. ) | Demand for Trial by Jury where permitted. |
| ) | |

**Plaintiff's Motion for Relief from Judgment, ECF # 91 and from Order, ECF #90**
**Pursuant to**
**Fed.R.Cv.P. 60(b)(2), (b)(6) and (d)(1); and for Subpoena and In Camera Review re:**
**New Facts.**

Plaintiff comes now and states before this Honorable Court the following:

a) On October 21, 2020, Plaintiff entered before this Honorable Court his *Motion Pursuant to Fed.R.Cv.P. 62.1 for an Indicative Ruling et seq., ECF #99*; subsequently on November 25, 2020, Plaintiff entered his *Motion for SUBPOENA and IN CAMERA REVIEW re: New Facts Presented in ECF #99, and in REPLY to ECF #100*.

b) On March 3, 2021, the United States Court of Appeals for the Tenth Circuit issued its ruling in case no. 20-1142 concerning the appeal of the Final Judgment, ECF #52, returning jurisdiction to this Honorable Court.

Pursuant to Fed.R.Cv.P. 60 (b)(2), (b)(6) and (d)(1), Plaintiff moves this Honorable Court through this *MOTION for Relief from Judgment* et seq, to take notice of new facts previously unavailable that are highly relevant to Plaintiff's FIRST CLAIM; and for Subpoena and In

Page 1 of 15

Camera Review re: New Facts. As stated by Plaintiff in ECF #99, these facts could not have been discovered in time to move for a new trial under Fed.R.Cv.P. 59(b). Plaintiff further moves for a favorable ruling to set aside (1) Final Judgment, ECF #91, and (2) post-judgment Order, ECF #90, as applied and pertaining to Plaintiff's FIRST CLAIM; and to reopen Plaintiff's First Claim for hearing of these new facts, and for limited discovery as required and befitting under due process.

This *MOTION* is timely entered as the Order Accepting Magistrate's Recommendations, ECF #51, was entered on March 9, 2020, and the Final Judgment regarding Plaintiff's Amended Complaint, ECF #52, specific to Plaintiff's FIRST CLAIM, was entered on March 10, 2020. The relevant new facts were first disclosed by independent third parties unknown to Plaintiff until September 26, 2020 and thereafter, and these and additional facts presented herein were obtained only recently as a result of a bit of luck and a lot of persistence.

## **MEMORANDUM OF LAW AND CIVIL PROCEDURES**

Fed.R.Cv.P. 60 (b) and 60 (d) state in relevant parts:

> (b) *Grounds for Relief from a Final Judgment, Order, or Proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> :
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> :
> (6) any other reason that justifies relief.
>
> (d) *Other Powers to Grant Relief*. This rule does not limit a court's power to:
>
> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
> :

## CAUSE AND JUSTIFICATION FOR RULE 60 MOTION ON NEW FACTS AND ALLEGATIONS

1. Pursuant to Fed.R.Cv.P. 60(b)(2) and (b)(6), and 60(d)(1), Plaintiff has good cause and justification for this MOTION as:

   (i) Plaintiff's Amended Complaint and pleadings alleged defendants Akins, SPAL PC, Spiegle, Ridings and KRV PC engaged in multiple schemes and artifices to defraud victims through a pattern of racketeering; and their actions directed at Plaintiff's custody dispute involving defendant Rebecca are common practice throughout the Enterprise that is the domestic relations courts of Colorado and Illinois. Plaintiff supported his claims with facts and inferential allegations, contending that *pattern* as an element of his 18 U.S.C. §1962 claim pursuant to the RICO ACT, exists and pervades so long as these defendants operate within the Enterprise. Plaintiff alleged and argued that defendants are an ever-present risk and danger to other victims until and unless they are removed from the Enterprise entirely; and that other victims can be located through discovery.

   (ii) However, upon defendants' joint motions to stay discovery pending a ruling on their motions to dismiss, this Court denied Plaintiff all discovery preventing Plaintiff from the benefit of this Court's authority to compel defendants to disclose information vital to Plaintiff's inferential allegations. Consequently, in its discretion this Court on March 10, 2020 dismissed Plaintiff's FIRST CLAIM based on an insufficient pleading of *pattern* element of his 18 U.S.C. §1968 claim, and specifically for failure to show *continuity* or its plausibility.

   (iii) Plaintiff entered Notice of Appeal on April 8, 2020 and jurisdiction of this matter transferred to the United States Court of Appeals for the Tenth Circuit on May 7, 2020.

   (iv) Since May 7, 2020 Plaintiff obtained new evidence showing that the pattern of racketeering and corrupt practices by defendants alleged in Plaintiff's

Page 3 of 15

Amended Complaint extends to include other practitioners within the family court network affiliated with defendants, herein specifically Akins, SPAL PC and Spiegle, and involves multiple victims. These new facts further support Plaintiff's allegations, inferential or otherwise, that the artifices to defraud described in the Amended Complaint are endemic and constitute common practice throughout the Enterprise. As stated in Plaintiff's complaint and pleadings, unless defendants are removed from the Enterprise, their corrupt practices will continue as these networks and relationships remain, creating an ever-continuing series of new victims. This is precisely the *pattern* element that RICO claims are required to show, inferred or otherwise, and that due process demands discovery under the authority of the trial court.

(v) Due to the Court's granting of a stay of all discovery pending resolution of defendants' motions to dismiss, Plaintiff was unable to timely establish whether defendants Akins, SPAL PC, Spiegle, Ridings and KRV PC had collaborated among them in other family court litigation creating other victims. Indeed, without this Court's authority to compel defendants to disclose of such facts, Plaintiff was left with the heavy burden to timely provide facts to support his inferential allegations.

2. New Facts and Allegations Raise Substantial Issues that Warrant Relief and Discovery and are presented below.

(i) On September 18, 2020 Plaintiff received an unsolicited voicemail from a private party, at the time unknown to Plaintiff, seeking an opportunity to discuss matters specific to their complaint against defendant Dr. Richard Spiegle[1]; this complaint is registered with Colorado Department of Regulatory Agencies (CO DORA) case no. 2020-5533. On information and belief, officials from Denver County/Jefferson County Child Protective Services (CPS) are also investigating.

---

[1] STATE OF COLORADO DEPT. OF REGULATORY AGENCIES Complaint No. 2020-5533.

(ii) On September 26, 2020 Plaintiff met with this party in Jefferson County, Colorado. Plaintiff was informed they were referred to Plaintiff's federal pleadings by a colleague of theirs who remains unknown to Plaintiff.

(iii) During this meeting, Plaintiff learned that defendant law firm SPAL PC and defendant Tanya Akins initially represented this party in divorce and custody litigation before the Denver District Court for a period between 2015 to 2017. As the attorney of record for this party, defendant Akins brought Dr. Gene Gross and Dr. William Fyfe to serve as forensic evaluators; and later in 2017 Dr. Spiegle was assigned by the court to serve as the family's therapist.

Following this meeting, the party further communicated with Plaintiff via text messages confirming that,

> *"Tanya brought in Fyfe in 2017 to do the original PRE report in 2017. Based on the results of that PRE report, (The report that said the ex-husband had major issues with the kids) Spiegel was brought in to be the family therapist. Tanya is responsible for getting both of them involved."*

(iv) After defendant Spiegle got involved with the family, defendants Akins and SPAL PC were fired by this party, and Drs. Gross and Fyfe were no longer on the case. On information and belief, this party fired Akins and SPAL PC for cause, but defendant Spiegle remained on their case per court order as the family's therapist.

(v) Plaintiff attests to his conversation with this party and from this conversation, on information and belief, this CO DORA complaint is well supported with physical exhibits and records; the charges are detailed and well documented. At the pleasure of this Court, and in the interest of justice, Plaintiff urges this Court issue a federal subpoena to produce under seal a copy of this complaint.

(vi) Between October 11 through October 18, 2020, an associate familiar with Plaintiff's federal RICO lawsuit helped facilitate several meetings between

Plaintiff, the party filing the CO DORA complaint against Spiegle, and other victims. These meetings produced additional facts, including the following:

a. Records and documentation exist showing networks of attorneys, law firms, psychologists and psychiatrists acting in cahoots to corrupt the domestic relations courts across Colorado, predominantly in Denver, Arapahoe, Jefferson, Adams, Weld, Boulder, and Douglas counties.

b. Plaintiff was told by victims of one such network comprised of the following agencies of attorneys and custody evaluators (Psy.D.'s and M.D.'s) who have or had associations with certain law firms:

   i. The attorneys include Tanya Akins, David A. Lamb; Daniel Deasy; Elizabeth Bonanno; Diane Wozniak; and Katie Ahles.

   ii. The custody evaluators include Dr. Richard Spiegle, Dr. William Fyfe, Dr. Gene D. Gross, Dr. Dana L. Cogan, MD (ret.), Edward C. Budd, Ph.D, Kathleen McNamara, Ph.D. PLLC; Katz & Loizeaux Forensics Services LLC; Marian Camden Psy.D. LLC; Barbara Shindell LCSW; and

   iii. The law firms are alleged to be Gutterman Griffiths PC a.k.a. Griffiths Law PC; Sherr Puttman Akins Lamb PC; GEM Family Law; Springer & Steinberg PC; McGuane and Hogan, PC a.k.a. Hogan Omidi, PC; and Sherman & Howard LLC.

c. In the multiple incidents alleged by victims involving falsified reports and unsupported allegations, the law firms of Gutterman Griffiths PC and Sherman & Howard LLC were often associated with Drs. William Fyfe, Gene Gross, Dana L. Cogan MD, Richard Spiegle, Edward C. Budd Ph.D., and Katz & Loizeaux Forensics Services. On information and belief, these law firms routinely collaborate with this network of psychologists and psychiatrist to fuel high conflict custody disputes and to fix litigation outcomes for personal enrichment.

d. This network of lawyers and custody evaluators operates in collusion to manipulate outcomes in custody litigation for personal enrichment, using omissions, falsified reports, and unsupported allegations to fuel high conflict family court disputes. Victims have also alleged custody

Page 6 of 15

evaluations were deliberately fixed in exchange for cash compensation and bribes.

e. On information and belief, victims of this network of lawyers and custody evaluators who spoke with Plaintiff attested to having incurred significant legal and professional fees ranging from $150,000 upwards to over $1.2 million per case from having to litigate unfounded allegations and intentional misrepresentations.

f. Dr. Gene D. Gross, a member of this network, was recently investigated regarding multiple custody cases, was sanctioned, and had his professional license to practice psychology suspended by the State of Colorado pending disciplinary proceedings.[2]  On information and belief, Dr. Gross is a close professional associate of Dr. Fyfe, and likely of Dr. Richard Spiegle; all are members of this network of corrupt lawyers and custody evaluators.

g. Prior to joining defendant Sherr Puttman Akins Lamb PC, defendant Tanya Akins worked for Gutterman Griffiths PC.  On information and belief, Gutterman Griffiths PC a.k.a. Griffiths Law routinely employs several of these corrupt custody evaluators, such as Drs. Gross, Fyfe and Spiegle.

(vii) On December 8, 2020, weeks after ECF #99, ECF #102 and ECF #103 were entered, Plaintiff received a call from another private individual referred to Plaintiff by one familiar with Plaintiff's case.  This private individual informed Plaintiff that Akins was involved in their custody litigation, that Akins involved Fyfe, and that Akins and Fyfe are alleged to have corruptly manipulated the facts and evidence to churn litigation to produce a targeted outcome.  Additionally, Plaintiff subsequently discovered this individual also collected testimonies provided voluntarily from more than a few dozen alleged victims of Akins and other lawyers, involving at least one of the named psychologists from the list of Fyfe, Gross and Spiegle.

---

[2] Sanctions were imposed by the State of Colorado against Dr. Gene D. Gross, CO License No. PSY.0004086, due to a summary suspension entered by CO DORA, effective 9/1/2019.

a. Plaintiff subsequently provided this individual with the list of schemes alleged in Plaintiff's Amended Complaint, ECF #52 @ ¶¶ 103-138. This individual identified at least two schemes named in Plaintiff's Amended Complaint were employed by Akins and Fyfe in their litigation.

b. On further inquiry, many of the schemes identified in Plaintiff's Amended Complaint, ECF #52 @ ¶¶ 103-138, and how these schemes were orchestrated, ECF #52 @ ¶ 99, were also identified in independent instances from this record, alleging Akins et al collaborated to defraud.

c. On information and belief, Plaintiff states that there exist *at least a dozen* credible independent instances, if not more, of individuals alleging corruption involving Akins and SPAL PC with Gross, Fyfe and/or Spiegle, where Akins' victims described her and her cohorts as predatory and manipulative. In one instance independently verified by Plaintiff, a private individual revealed they are in the process of soon bringing a racketeering lawsuit arising from circumstances surrounding their family court litigation; when Plaintiff pressed for details, this individual stated that Akins and Fyfe are involved in the underlying controversy, that Akins and Fyfe are considered hostile parties in this case, but would not at this time reveal to Plaintiff whether Tanya Akins and/or William Fyfe will be named defendants.

d. The one constant that seems to pervade throughout these testimonies, once victims strip off the emotional angst that accompanies these events and they've had some time to reflect, and when clarity of thinking returns, they often come to the realization they or their spouses were manipulated by Akins' and her cohort's predatory practices which consequently increased conflict in their cases. For example, they were told that they will end up paying child support if they didn't "do this," or lose custody if they don't "do that"; and then often individuals like Fyfe, Gross and/or Spiegle are introduced into litigation. It would seem that predatory practices are often

recognized as unlawful across many industries and professions; Plaintiff argues it should be no different in family law and especially where children and the vulnerable are involved.

e. Due to the many private, confidential, and legal issues associated with these new facts, Plaintiff, on information and belief, is not at liberty to further provide identities and details at this time under this MOTION [see, ECF #99, #102 and #103 for supporting facts and arguments; see also, *Trammel v. United States*, 445 U.S. 40, 50 (1980) and *United States v. Nixon*, 418 U.S. 683, 710 (1974)].   The powers of this Court, the Fed.R.Cv.P. and the Federal Rules of Evidence however do provide all parties in this case access to these new facts to argue for or against their admission as having substantial, probative, and relevant evidence to enable this Court to issue a ruling pursuant to Fed.R.Cv.P. 60(b)(2).

(viii) On March 2, 2021, an article titled "*31 Missouri Judges Recuse Themselves from Lawsuit Alleging Family Court Guardians and Psychologists Orchestrated Money-Making Scheme*."  This news appeared on several news outlets, local and national, including but not limited to https://pjmedia.com/news-and-politics/megan-fox/2021/03/02/31-missouri-judges-recuse-themselves-from-lawsuit-alleging-family-court-guardians-and-psychologists-orchestrated-money-making-scheme-n1428930 .

According to the article cited from the link, "The lawsuit alleges a scheme perpetrated by a group of professionals to drain parents involved in custody battles.  At the end of the court process, parents are broke, and kids are traumatized while GALs, court-appointed psychologists, and therapists are enriched. … The suit alleges that this pattern is a regular family court occurrence when Pudlowski (guardian ad litem i.e., GAL, Elaine Pudlowski) is involved."

The "scheme" alleged in the Missouri lawsuit includes creating conflict to churn litigation and generate billable hours through "altering evidence in violation of law", where the perpetrators willfully and knowingly rendered and

billed "for services that were harmful and injurious," all for personal enrichment.

This new fact is relevant to and has probative value supporting Plaintiff's allegations and claims against Akins, SPAL PC, Ridings, KRV PC and Spiegle when considered together with Plaintiff's Amended Complaint FIRST CLAIM and the new facts presented above and from ECF #99, #102 and #103. Not only does this lawsuit in Missouri support Plaintiff's allegation that the corruption identified in ECF #52 is widespread across the Enterprise not just in Colorado and Illinois but in many other states, and importantly, the alleged schemes presented in the Missouri lawsuit very closely resemble the schemes described in ECF #52 @ ¶¶ 103-138.

Importantly, the fact that 31 Missouri judges recused themselves from this lawsuit suggests the corruption may be more widespread but there's no evidence, at this time, to suggest more.

(ix) On information and belief, aside from the timing and the jurisdiction where these occurrences took place, these new facts are not random coincidences as the acts of racketeering and corruption perpetrated by Akins, Spiegle and SPAL PC against Plaintiff are practices alleged to be both common and widespread throughout the Enterprise [see above, ¶ 2(i)-(vi); see also, ECF # 52 @ ¶¶ 93-95].

(x) On information and belief, it was not coincidental that Akins and Spiegle approached the Denver District Court in *ex-Parte* communications to use Spiegle as a forensic evaluator while Spiegle was separately engaged as a therapist for Plaintiff's child. [See above, 2(iii)] Based on these new facts, Plaintiff's earlier allegation that defendants Akins, Rebecca and SPAL PC intentionally set out to use Spiegle in a forensic capacity under the guise of a therapist only to later testify against Plaintiff, for the purpose of fixing the outcome of litigation, is not only plausible but can be shown to exist as a pattern with continuity affecting other victims.

3. For purposes of this MOTION and Plaintiff's case, the significance of these new facts and allegations rest with the associations of defendants Akins, SPAL PC, and Spiegle with other bad actors operating within the Enterprise; and that Akins and her cohorts represent a continuing threat which is also cognizable in both pattern and execution based on the schemes to defraud as alleged already by Plaintiff in ECF #52. In addition to Plaintiff's allegations, these actors are alleged by other victims to have churned litigation, falsified records and engaged in predatory practices for personal enrichment. Importantly, at least one member of this network was recently sanctioned and had his professional license summarily suspended by the State of Colorado pending disciplinary proceedings [see above, ¶ 2(vi)(f)].

4. On information and belief, defendants Akins, SPAL PC and Spiegle engaged in schemes and racketeering practices that are both common and widespread throughout the Enterprise; and that Akins, SPAL PC and Spiegle are intimately familiar with these schemes from their long-standing collaboration with other bad actors within the Enterprise. These new facts support Plaintiff's prior inferential allegations. In the interest of justice, this Court should grant relief from judgment to allow discovery to proceed as relates to the First Claim.

## ARGUMENT

Plaintiff incorporates as if herein his arguments presented in his: (a) pending *MOTION for IN CAMERA REVIEW re New Facts Presented in ECF #99, and in REPLY to ECF #100*, and (b) *Plaintiff's REPLY to Defendants' Responses, ECF # 100 and ECF #101, Concerning Plaintiff's MOTION, ECF #99* [see, ECF #102 et seq and ECF #103 et seq.]; and further states:

5. The District Court, when concluding it lacked subject matter jurisdiction of those claims due to *Rooker-Feldman*, consequently also denied Plaintiff *all* discovery. Plaintiff believes this to be an abuse of discretion for the District Court when it subsequently assumed jurisdiction of Plaintiff's FIRST CLAIM while maintaining its denial of discovery to include this claim. Subsequently, the Court erred in law and due process by dismissing, during the pleading-phase

of these proceedings, Plaintiff's FIRST CLAIM, despite factual and inferential allegations that 18 U.S.C. §1962 defendants Akins, Ridings, Spiegle, SPAL PC, and KRV PC are regular actors engaged in schemes and practices shown in Plaintiff's Amended Complaint to be common and widespread throughout the Enterprise [see ECF # 52 at ¶¶ 103-141; see specifically, ¶ 141 Case A.] involving other victims.  This fact from the proceedings also questions whether the District Court held Plaintiff's *Pro Se* Amended Complaint to a higher standard of pleading more befitting of attorney written pleadings, and failed to adhere to the guidance of the Supreme Court, and most recently affirmed by the 10th Circuit, to construe the complaint "must be viewed in the light most favorable to the party opposing the motion," at the motion to dismiss stage and determine whether the Plaintiff may be entitled to relief, see *United States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); and *Ullery v. Bradley*, 19-1079 (10th Cir. 2020).

6. The District Court's denial of *all* discovery, including the ordering of standard interrogatories, is questionable under the factors set forth in *String Cheese Incident, LLC v. Stylus Shows, Inc*., No. 02-cv-01934-LTB-PAC, 2006 WL 894955 at *2 (D.Colo. Mar. 30, 2006).  These factors to determine good cause under Local Rule 30.2B are: (1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  Plaintiff's right to due process was denied and he was prejudiced by the Court's stay of all discovery for the FIRST CLAIM as it took jurisdiction to rule on Plaintiff's FIRST CLAIM; as such the *Rooker-Feldman* doctrine apparently does not apply to his First Claim.  Pursuant to *String Cheese Incident, LLC* factor (1), Plaintiff was directly harmed.  Equally important per factors (4) and (5), and the new facts concerning an investigation into defendant Spiegle by the State of Colorado DORA and CPS recently provided to Plaintiff by other victims, with the additional new facts concerning

defendant Akins and SPAL PC presented herein, a substantial injustice has resulted from the abuse of discretion of this Court. The outcome from the State of Colorado DORA review [see ECF #103 et seq.] should not be used to determine the probative value and significance of the new facts pertaining to Spiegle for the arguments presented by Plaintiff in ECF #103 et seq. Importantly, like Gross and Fyfe, Spiegle's role is that of one player in the orchestration of the scheme to defraud; in Plaintiff's case, as was the case underlying the DORA complaint against Spiegle, [see above, 2(iii)-(iv)] and other new cases [see above, 2(vi)-(viii)], it is Akins and the attorneys involved were the conductors orchestrating the fraud [see ECF #52 @ ¶¶ 97, 99].

7. Plaintiff's Amended Complaint provided both factual and inferential allegations showing plausibility for the 18 U.S.C. §1962 element of "pattern" (specifically, "continuity") to exist for defendants Akins, SPAL PC, Ridings, KRV PC and Spiegle. This warrants further discovery, including interrogatories, as to the alleged violations of 18 U.S.C. §1962, and is consistent with the guidance of the Supreme Court of the United States in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

8. Plaintiff argues that his Amended Complaint, together now with the new facts alleged herein this MOTION, satisfy the *Twombly* plausibility standard for providing factual, both direct and inferential, allegations respecting all the elements necessary to sustain his First Claim under the legal theory of showing pattern/continuity, open and close, under 18 U.S.C. §1962. Importantly, the Amended Complaint explicitly stated that Plaintiff would support his factual and inferential allegations through discovery to show these defendants pose a continuing RICO threat. Despite the District Court granting Defendants' motions staying *all* discovery, and by doing so denied Plaintiff due process, Plaintiff was able to sustain an independent investigation and effort to produce evidence supporting his inferential allegations. [See, *Shero v. City of Grover*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2207)]

9. Through this effort, from September 26, 2020 to present, Plaintiff received independently sourced statements, facts and possibly admissible evidence of professional misconduct and questionable ethics involving defendants Spiegle, Akins and SPAL PC. Importantly, it was made known to Plaintiff following December 8, 2020 that multiple victims provided independently documented statements alleging defendant Akins' conduct in their litigation and Akins' association with other bad actors alleged to have employed schemes to defraud like or identical to the schemes used against Plaintiff described in ECF # 52 @ ¶¶ 99, 103-138. These new facts raise significant issues that challenge the fairness of the ORDER, ECF #90, adopting the recommendations of the Magistrate Judge pertaining to Plaintiff's FIRST CLAIM. The coordinated and collective acts of defendants Akins, SPAL PC, and Spiegle, and their association with other bad actors operating within the Enterprise in other unrelated litigation in the family courts of Colorado, support Plaintiff's allegations that is the foundation of Plaintiff's FIRST CLAIM, ECF #52. Akins with her cohorts not only victimized Plaintiff, but represent a continuing threat cognizable in pattern, continuity and execution that has in the past, and will likely continue to in the future, harm other victims through their employment of schemes to defraud as alleged by Plaintiff in ECF #52.

10. In the interest of justice, the new facts raised herein represent significant issues concerning Plaintiff's First Claim and to the showing on pattern and continuity requisite for a RICO claim. As allowed by Rule 60(b)(2) and 60(b)(6), this Honorable Court has the discretion and authority to (1) consider these new facts on their merits pursuant the rules of evidence, (2) to issue subpoenas to produce such evidence and testimonies under oath, and (3) to conduct an *In Camera* hearing involving all parties to determine the admissibility of the new facts and evidence. In support, Plaintiff is prepared to make available to this Court at hearing the presence of individual witnesses, their in-person testimonies under oath relating to the new facts presented herein, and to propose a schedule for discovery once this Court grants relief from ECF #90 and ECF #91 concerning Plaintiff's First Claim.

## MOTION

11. Pursuant to Fed.R.Cv.P. 60(b)(2) and 60(b)(6), and on account of new facts, statements made to Plaintiff by third parties, and the existence of possibly admissible evidence presented herein, Plaintiff respectfully moves this Honorable Court to grant Plaintiff's motion for subpoenas and an *In Camera* hearing to review the new evidence in support of Plaintiff's Rule 60(b)(2) motion for relief; and thereafter grant relief from Judgment, ECF #91 and Order ECF #90 as concerns FIRST CLAIM in Plaintiff's Amended Complaint, ECF #52.

## SUMMARY AND PRAYER

**WHEREFORE**, pursuant to Fed.R.Cv.P. 60(b)(2), 60(b)(6) and 60(d), your undersigned Plaintiff, Gilbert T. Tso, now prays that this Honorable Court:

(A) GRANT Plaintiff's motion for ISSUANCE OF SUBPOENAES TO PRODUCE, UNDER SEAL, copies of relevant files and documents from COLORADO DEPT. OF REGULATORY AGENCIES case no. 2020-5533 and to summon witnesses to testify under oath as to the facts presented herein, and for the admittance of evidence into the record of this case; and

(B) FOR HEARING *INSTANTER* to examine these new facts, to produce witnesses and testimonies in accordance with the Federal Rules of Evidence and laws governing this case; and

(C) FOR RULE 60(b)(2), (b)(6) and (d) RELIEF FROM JUDGMENT/ORDER re: Plaintiff's FIRST CLAIM; and

(D) any other relief that the Court deems fair and equitable.

Respectfully submitted,

s/ Gilbert T. Tso
**Gilbert T. Tso**
3700 Quebec Street, #100-228
Denver, CO  80207
Telephone: 312-339-1968
Email: gilbert.tso@gmail.com
*Pro Se Plaintiff, Party of Record*

Page 15 of 15

## CERTIFICATION OF DUTY TO CONFER

On March 4, 2021 Plaintiff contacted Defendants' counsels to confer on Plaintiff's *Motion for Relief from Judgment, ECF # 91 and from Order, ECF #90 Pursuant to Fed.R.Cv.P. 60(b)(2), (b)(6) and (d)(1); and for Subpoena and In Camera Review re: New Facts*.

Counsels for defendants all indicated they oppose this Motion.  Plaintiff reports this is a contested motion.

s/ Gilbert T. Tso_____
***Gilbert T. Tso***
3700 Quebec Street, #100-228
Denver, CO  80207
Telephone: 312-339-1968
Email: gilbert.tso@gmail.com
*Pro Se Plaintiff, Party of Record*

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within *Plaintiff's Motion Pursuant to Fed.R.Cv.P. 62.1 for an Indicative Ruling on a Fed.R.Cv.P. 60(b)(2) and (b)(6), (d)(1) Motion for Relief from Judgment, ECF # 91; and from Order, ECF # 90* upon all parties herein by depositing copies of same via CM/ECF, this 9th day of March 2021, addressed as follows:

**By CM/ECF:**

Allison R. Ailer, Ass't. Att'y General
State of Colorado
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
E-Mail:  allison.ailer@coag.gov
*Counsel of Record

Robert A. Wolf, Esq.
Sherri L. Catalano
City and County of Denver
1200 Federal Blvd., 4th Floor
Denver, CO 80204
E-Mail:  robert.wolf@denvergov.org
*Counsels of Record

Tory D. Riter, Esq.
Kelly L. Kafer, Esq.
Baldwin Morgan & Rider, P.C.
1512 Larimer Street, Ste. 450
Denver, CO 80202
E-Mail:  triter@morganrider.com
             kkafer@morganrider.com
*Counsels of Record

Richard M. Murray, Esq.
Polsinelli P.C. - Denver
1401 Lawrence Street, Ste. 2300
Denver, CO 80202
E-Mail:  rmurray@polsinelli.com
             rwarren@polsinelli.com
*Counsel of Record

Eric M. Ziporin
Jonathan N. Eddy
Senter Goldfarb & Rice, LLC
3900 East Mexico Avenue
Suite 700
Denver, CO 80210
E-Mail:  eziporin@sgrllc.com
             jeddy@sgrllc.com
*Counsels of Record

Kevin S. Taylor, Esq.
Taylor Anderson LLP
1670 Broadway, Suite 900
Denver, CO 80202
E-Mail:  ktaylor@talawfirm.com
*Counsel of Record

s/ Gilbert T. Tso_____
*Gilbert T. Tso*
3700 Quebec Street, #100-228
Denver, CO  80207
Telephone: 312-339-1968
Email: gilbert.tso@gmail.com
*Pro Se Plaintiff, Party of Record*